Mark L. Smith (BarNo. 213829)
mls@clydesnow.com
CLYDE SNOW & SESSIONS
10990 Wilshire Boulevard, Fourth Floor
Los Angeles, California 90024
Telephone: (424) 672-4815
Facsimile: (424) 672-4816

Attorneys for Plaintiff
InfoStream Group, Inc.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

CV12-09315 MWF (JENx)

| | |
|---|---|
| INFOSTREAM GROUP, INC., a Nevada Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> AVID LIFE MEDIA, INC., a foreign corporation; AVID DATING LIFE, INC., d/b/a The Ashley Madison Agency, a foreign corporation; ESTABLISHED MEN, INC., a foreign corporation; Corporations 1-10, Limited Liability Companies A-Z, and DOES 1-10, inclusive, <br><br> Defendants. | CASE NO.: <br><br> **COMPLAINT FOR:** <br><br> 1. **FEDERAL TRADEMARK INFRINGEMENT;** <br> 2. **FEDERAL UNFAIR COMPETITION;** <br> 3. **FEDERAL TRADEMARK DILUTION;** <br> 4. **FEDERAL CYBERPIRACY;** <br> 5. **CALIFORNIA TRADEMARK DILUTION AND INFRINGEMENT;** <br> 6. **CALIFORNIA UNFAIR BUSINESS PRACTICES;** <br><br> **DEMAND FOR JURY TRIAL** |

1

COMPLAINT

Plaintiff InfoStream Group, Inc. (or, "InfoStream"), d/b/a SeekingArrangement.com, SeekingMillionaire.com and WhatsYourPrice.com (collectively the "Dating Websites") brings this Complaint against Defendants Avid Life Media, Inc. ("Avid"), Avid Dating Life, Inc. ("ADL"), Established Men, Inc. ("EMI"), Corporations 1-10, Limited Liability Companies A-Z, and Does 1-20 (collectively, "Defendants"), alleging as follows:

## INTRODUCTORY STATEMENTS

1.      This lawsuit arises out of the Defendants' serial infringement of Plaintiff InfoStream's trademarks, including the marks "Seeking Arrangement," "Mutually Beneficial Relationships," "Seeking Millionaire," and "What's Your Price." InfoStream operates websites that promote and facilitate "sugar daddy dating," or dating between financially stable benefactors (sugar daddies) and attractive companions (sugar babies) who make connections based on online profiles. Since 2006, Plaintiff has spent hundreds of thousands of dollars building and marketing its sugar daddy dating business, including creating brand loyalty through the use of the marks "Seeking Arrangement," "Mutually Beneficial Relationships," "Seeking Millionaire," and "What's Your Price." Since no later than 2009, Defendants, who operate competing websites, have infringed on Plaintiff's trademarks to unfairly compete against Plaintiff and to create market confusion that siphons off Plaintiff's customers and dilutes the valuable brands Plaintiff has developed. Defendants have conducted this trademark infringement through brazen use of Plaintiff's marks on their competing websites, by using deliberately confusingly similar phrases in their advertising, through infringement by a network of websites they operate that are designed deceptively to appear to be third parties, and through a network of affiliates who are paid to provide customers to Defendants and encouraged to infringe on Plaintiff's marks.

2.      Plaintiff attempted to end Defendants' persistent trademark

1   infringement by filing a lawsuit against Defendants for infringement and unfair

2   business practices in 2010. Ultimately Plaintiff and Defendants settled that

3   lawsuit and associated nuisance suits filed by Defendants. However that

4   settlement did not end Defendants' infringement. After the settlement the

5   Defendants initiated new infringements of all of Plaintiff's trademarks, including

6   the new marks "Seeking Millionaire" and "What's Your Price." These

7   infringements include (1) using Plaintiff's marks on Defendants' competing

8   websites; (2) using apparent third-party websites that are actually owned by

9   Defendants to infringe on Plaintiff's marks; (3) causing affiliates to use and

10   rewarding affiliates for using Plaintiff's trademarks; (4) using Plaintiff's marks

11   in the meta-data associated with Defendants' websites; (5) purchasing pay-per-

12   click advertisements using Plaintiff's marks; and (6) most recently launching a

13   website designed to create market confusion with Plaintiff's successful and

14   popular website "What's Your Price."

15      3.      Plaintiff is seeking monetary damages for the infringement of all of

16   Plaintiff's trademarks as well as costs and fees.

17   ## JURISDICTION AND VENUE

18      4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§

19   1331 and 1338 in that Plaintiff's claims arise under the Lanham Trademark Act,

20   15 U.S.C. § 1051, et seq., and present a federal question involving unfair

21   competition and trademarks. This Court has supplemental jurisdiction over the

22   claims arising under the laws of the State of California pursuant to 28 U.S.C. §

23   1367.

24      5.      In addition, this Court has subject matter jurisdiction over the action

25   pursuant to 28 U.S.C. § 1332 on the basis of complete diversity between the

26   parties. The amount in controversy, without interest and costs, exceeds the sum

27   of $75,000.

28      6.      Venue is proper in this district under 28 U.S.C. §1400(a) and

§1391(b) and (c) because, on information and belief, a substantial part of the events, misrepresentations and omissions giving rise to the claims asserted herein occurred within this judicial district, and substantial injury occurred in this district. In addition, on information and belief venue is proper is this district pursuant to 28 U.S.C. 1391(d) in that at least some of the Defendants are aliens residing in, located in, or existing in Toronto, Canada.

7.      Personal jurisdiction exists over Defendants because Defendants conduct business in California and in this judicial district, or otherwise avail themselves of the privileges and protections of the laws of the State of California, such that they do not offend traditional notions of fair play and due process to Defendants in the jurisdiction herein.

## PARTIES

8.      Plaintiff INFOSTREAM GROUP, INC., ("InfoStream") is now, and was at the time of acts alleged in this complaint, a corporation duly organized and existing under the laws of Nevada, with its principal place of business in Nevada. Lead Wey is the founder and CEO of InfoStream. Wey is a graduate of the Massachusetts Institute of Technology and the Massachusetts Institute of Technology's Sloan School of Management, and has used his sophisticated understanding of computer science technology to develop innovative dating websites that use complex algorithms to match his customers to potentially compatible partners. His unique use of technology and business acumen has drawn attention to Plaintiff from various media sources. InfoStream operates multiple such dating websites including SeekingArrangement.com, SeekingMillionaire.com and WhatsYourPrice.com.

9.      Plaintiff is informed and believes that Defendant AVID LIFE MEDIA, INC. ("Avid") is a foreign corporation with its principal place of business at 20 Eglinton Ave. West, Suite 1200, Toronto, Ontario, Canada M4R 1K8.

4
COMPLAINT

1    10.    Plaintiff is informed and believes that Defendant AVID DATING
2  LIFE, INC. ("Avid Dating") is a foreign corporation with its principal place of
3  business at 505 University Ave, Suite 1400, Toronto, Ontario, Canada M5G
4  1X3.

5    11.    Plaintiff is informed and believes that Defendant ESTABLISHED
6  MEN, INC., ("Established Men") is a foreign corporation with its principal place
7  of business at 20 Eglinton Ave. West, Suite 1200, Toronto, Ontario, Canada
8  M4R 1K8.

9    12.    The true names and capacities, whether individual, corporate,
10  associate of otherwise, of Defendants herein designated by fictitious names
11  Corporations 1-10; Limited Liability Companies A-Z; and Does 1-20, inclusive,
12  are unknown to Plaintiff at this time, who therefore sues defendants by such
13  fictitious names. Plaintiff will ask leave of this Court to amend this Complaint to
14  insert the true names and capacities of such fictitiously-named defendants when
15  they have been ascertained. Plaintiff alleges on information and belief that such
16  defendants are in some manner responsible for the damages hereinafter alleged.

17  **FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

18  A.    **InfoStream Creates a Profitable Business Using its Trademarks to**
19         **Build a Strong Brand Association with InfoStream's Websites**

20    13.    Plaintiff InfoStream owns and operates a number of dating websites
21  that promote and facilitate niche dating, specifically sugar daddy dating. Sugar
22  daddy dating involves matching generous benefactors willing to pamper and
23  offer financial assistance or gifts to younger attractive partners in return for their
24  friendship or companionship.

25    14.    SeekingArrangement.com was launched in 2006 and promotes
26  "mutually beneficial relationships" between members who are referred to as
27  either "sugar daddy," "sugar mommy," or "sugar baby" users. Since its launch,
28  SeekingArrangement.com has become the market leader in the sugar daddy

1   dating segment of the Internet dating market.

2       15.    SeekingArrangement.com's business model and high quality

3   product have attracted attention from the mainstream news media. Articles in *The*

4   *New York Times, Vanity Fair, U.S. News and World Report, Playboy,* and

5   Freakanomics.com have profiled or referenced SeekingArrangement.com and its

6   distinct business model. This attention is not limited to print media.

7   SeekingArrangement.com or Lead Wey have been profiled on television news

8   programs on numerous networks including CNN, ABC News 20/20, CBS News,

9   Fox News, Good Morning America, Dr. Phil, and MSNBC.

10      16.    Because of this publicity and Plaintiff's substantial expenditures on

11  advertising, SeekingArrangement.com has become a well-known and

12  recognizable worldwide brand and is associated in the minds of consumers with

13  online dating, specifically in the sugar daddy dating market.

14      17.    Plaintiff has invested hundreds of thousands of dollars to promote

15  SeekingArrangement.com and its associated trademarks. As a result, the

16  trademarks "Seeking Arrangement" and "Mutually Beneficial Relationships"

17  have become synonymous with Plaintiff's business and the high quality product

18  that SeekingArrangement.com provides.

19      18.    InfoStream also owns and operates Seeking Millionaire and What's

20  Your Price. Seeking Millionaire is an online dating website established in 2006

21  that acts as an elite matchmaking service between financially successful and

22  beautiful partners. Seeking Millionaire uses its connection with Seeking

23  Arrangement in its marketing and links to the Seeking Arrangement website in a

24  way that builds off the brand established by Seeking Arrangement to add

25  additional users and increase Seeking Millionaire's market presence.

26      19.    What's Your Price is an online dating website and marketplace

27  established in March 2011 that allows members to buy and sell the opportunity of

28  going out on a first date. What's Your Price features a unique business model

that in the brief time it has operated has attracted the attention of numerous media outlets including *Time, Forbes, The Atlantic, ABC News,* MSNBC, *the San Francisco Chronicle,* and Fox News Channel. The website has been an instant success growing to tens of thousands of paying users.

20.     Plaintiff has invested hundreds of thousands of dollars to promote WhatsYourPrice.com and its associated trademarks. As a result, the trademark "What's Your Price" has become synonymous with Plaintiff's business and the high quality product that WhatsYourPrice.com provides.

21.     Because each of Plaintiff's websites associate with Plaintiff's other high quality and famous websites, Seeking Arrangement, Seeking Millionaire, and What's Your Price all benefit from the market recognition and brand association created by Plaintiff InfoStream and its trademarks "Seeking Arrangement," "Mutually Beneficial Relationships," "Seeking Millionaire," and "What's Your Price."

**B.     InfoStream Obtained Legal Protection for Trademarks Associated with its Websites and Brand, Which it has Used to Build its Business.**

22.     In order to protect their investment in their brands and their online dating business, Plaintiff has sought and received legal protection of the trademarks "Seeking Arrangement," "Mutually Beneficial Relationships," "Seeking Millionaire," and "What's Your Price."

23.     On May 29, 2007, Plaintiff InfoStream applied for the registration of its "Seeking Arrangement" trademark. United States Trademark Registration No. 3,377,772 was issued on February 5, 2008.

24.     On June 8, 2009, Plaintiff InfoStream applied for the registration of its "Mutually Beneficial Relationships" trademark. United States Trademark Registration No. 3,736,566 was issued on January 12, 2010.

25.     On August 17, 2009, Plaintiff InfoStream applied for the registration of its "Seeking Millionaire" trademark. United States Trademark

1  Registration No. 3,767,229 was issued on March 30, 2010.

2       26.    On February 4, 2011, Plaintiff InfoStream applied for the

3  registration of its "What's Your Price" trademark. United States Trademark

4  Registration No. 4,155,033 was issued on June 5, 2012.

5       27.    Since at least 2006, Plaintiff has continuously used the "Seeking

6  Arrangement" mark in commerce to promote its online dating goods and

7  services. Since at least 2007, Plaintiff has continually used the "Mutually

8  Beneficial Relationships" and "Seeking Millionaire" marks in commerce to

9  promote its online dating goods and services. Since at least 2011, Plaintiff has

10  continually used the "What's Your Price" mark in commerce to promote its

11  online dating goods and services.

12       28.    Plaintiff continuously used the trademarks "Seeking Arrangement,"

13  "Mutually Beneficial Relationships," "Seeking Millionaire," and "What's Your

14  Price" in connection with the promotion, advertising and sale of multiple services

15  provided on SeekingArrangement.com, SeekingMillionaire.com and

16  WhatsYourPrice.com, well before the acts of Defendants complained of herein.

17       29.    Plaintiff operates the websites SeekingArrangement.com,

18  SeekingMillionaire.com, and WhatsYourPrice.com in connection with the

19  promotion, advertising, and sale of its services, and operated the websites before

20  the acts of Defendants complained of herein.

21       30.    Plaintiff spent hundreds of thousands of dollars and expended years

22  of effort beginning in 2006, in advertising, promoting and developing the

23  trademarks "Seeking Arrangement," "Mutually Beneficial Relationships,"

24  "Seeking Millionaire," and "What's Your Price" throughout the United States

25  and internationally. As a result of such advertising and expenditures, Plaintiff has

26  created famous marks that are recognized throughout the internet dating industry.

27  Plaintiff has established considerable goodwill in the trademarks "Seeking

28  Arrangement," "Mutually Beneficial Relationships," "Seeking Millionaire," and

"What's Your Price." The trademarks "Seeking Arrangement," "Mutually Beneficial Relationships," "Seeking Millionaire," and "What's Your Price" are valuable assets of Plaintiff and are of substantial worth to Plaintiff.

**C.   Defendants Compete with Plaintiff through a Network of Websites and Affiliates that Obscure Defendants' Role in Infringing on Plaintiff's Trademarks.**

31.    Defendant Avid Life Media, Inc. is a Canadian corporation that operates as the parent company of multiple dating websites including EstablishedMen.com, CougarLife.com, SwapperNet.com, ManCrunch.com, TheBigAndTheBeautiful.com and AshleyMadison.com.

32.    Ashley Madison is a website owned and operated by Defendants that encourages married individuals to cheat on their spouses. The Ashley Madison slogan is "Life is short. Have an Affair."

33.    Avid also operates a series of websites that act as advertisements for its internet dating websites. These advertising websites are not clearly identified as being associated with Avid and in many instances have names and URLs that would lead casual consumers to believe that they are third parties when in fact these websites act as advertisements funneling customers to Defendants' other websites.

34.    Avid also operates an extensive network of affiliates of its websites. These affiliates are either owned by Avid or by third parties. Many of the affiliates are "white label" copies of Avid's websites that provide a different façade but have the same customer database as Avid's core businesses. Other affiliates are third parties that are paid to introduce customers to Avid's dating websites.

35.    Established Men, Inc. is a Canadian corporation that is part of the Avid family of companies. Established Men, Inc. owns and operates EstablishedMen.com. Established Men, Inc. also owns other websites, including

1 | ArrangementFinders.com.

2 |     36.    EstablishedMen.com is an internet dating website established no

3 | later than 2009. EstablishedMen.com competes in the sugar daddy dating market

4 | segment with Plaintiff's website, Seeking Arrangement. In 2009, Established

5 | Men, Inc. also operated a website at www.arrangementseekers.com.

6 | Arrangement Seekers was operated as a white label copy of the

7 | EstablishedMen.com website.

8 |     37.    A white label copy is a website that shares the database and

9 | substantive content of another website but is branded with logos, images and

10 | marketing materials to make it appear to be an independent website. In this way

11 | the two websites work in tandem to build a single business but provide two

12 | separate virtual storefronts to consumers. Defendants have used white label

13 | websites to build their business while obscuring their role in the white label

14 | websites' infringement on Plaintiff's trademarks and businesses.

15 | **D.**   **Defendants' Early Trademark Infringement**

16 |     38.    Plaintiff established Seeking Arrangement in 2006. The business

17 | quickly became profitable and well known as a niche dating website. After

18 | Plaintiff's website Seeking Arrangement became known and commercially

19 | successful, Defendants were interested in purchasing Seeking Arrangement from

20 | Plaintiff in 2007. Plaintiff was not interested in selling.

21 |     39.    Unable to acquire Seeking Arrangement, Defendants registered the

22 | domain EstablishedMen.com and began to advertise and to promote an online

23 | dating website in the "sugar daddy" genre, competing against Plaintiff's service.

24 | Soon after, Defendants also established a white label copy of Established Men

25 | using the URL www.arrangementseekers.com. Although Arrangement Seekers

26 | appeared to be an independent website, it was actually merely a copy of

27 | Established Men that was rebranded by Defendants to capitalize on Plaintiff's

28 | trademark "Seeking Arrangement," and to create market confusion that would

use Plaintiff's trademark to build Defendants' competing business all while obscuring Defendants' role in the infringement. Defendants deliberately used a name that was similar to Plaintiff's successful trademark and business name so as to build their business by confusing consumers rather than competing on the merits of their product.

40.   In advertisements and promotional materials for its competing products, Defendants used Plaintiff's marks "Seeking Arrangement" and "Mutually Beneficial Relationships."

41.   Defendants took affirmative steps to maximize brand confusion. For example, Defendants created a network of affiliated websites and blogs littered with Plaintiff's marks "Seeking Arrangement" and "Mutually Beneficial Relationships". These affiliated websites and blogs were filled with content critical of Plaintiff's websites. In many instances these websites purported to provide independent critiques of Plaintiff's websites, but these critiques were actually produced by Defendants' marketing department to disparage the service provided by Plaintiff's websites, and to drive customers from Plaintiff's business to Defendants'. This network of websites had text and advertisements that linked to Defendants' websites AshleyMadison.com, ArrangementSeekers.com and EstablishedMen.com.

**E.   Plaintiff Has Had to Sue Defendants Once Already to Force Them to Discontinue Their Trademark Infringement**

42.   In 2010, after numerous attempts to resolve the trademark infringement and unfair business practices of Defendants, Plaintiff brought suit against Defendants, alleging that Defendants had engaged in trademark infringement and dilution under both federal and California law and had engaged in unfair business practices under California law. In retaliation, Defendants filed counter claims against Plaintiff in the United States, and also filed a nuisance lawsuit against Plaintiff in Canada.

43.    Eventually Plaintiff and Defendants engaged in negotiations to settle the lawsuits. On September 27, 2011, Plaintiff and Defendants entered into a settlement agreement resolving those prior disputes.

F.   **Defendants' Trademark Violations Immediately Following Resolution of the Prior Litigation on Plaintiff's "Seeking Arrangement" and "Mutually Beneficial Relationships" Marks Show Their Bad Faith and Intent to Willfully Infringe on Plaintiff's Trademarks**

44.    Notwithstanding this agreement, Defendants almost immediately began infringing on the exact trademarks at issue in the lawsuit in the exact manners contested in the lawsuit.

1.   **Defendants' Websites use Plaintiff's Trademarks "Seeking Arrangement" and "Mutually Beneficial Relationships"**

45.    As a result of the settlement agreement, Defendants transferred the URL www.ArrangementSeekers.com to Plaintiff. Shortly thereafter, however, Defendants or their affiliate registered the URL ArrangementFinders.com and began operating the website "Arrangement Finders" as a white label copy of EstablishedMen.com. The purpose of operating Arrangement Finders as a white label copy of Established Men was to create the appearance of a broader market presence and to attempt to isolate trademark infringing conduct in a purportedly separate corporate and business entity.

46.    Arrangement Finders uses Plaintiff's mark "Mutually Beneficial Relationships" in its marketing. The Arrangement Finders website includes a page at http://arrangementfinders.com/info/mutually-beneficial.html. A banner at the top of this page identifies it as "MUTUALLY BENEFICIAL RELATIONSHIP INFO." The page claims that Arrangement Finders is a "site where men and women find discreet, *mutually beneficial relationships*" (emphasis added). This confusing use of Plaintiff's marks causes Defendants' website to appear when Plaintiff's marks are searched by consumers using search

1  engines, and makes it difficult for consumers to distinguish between the product

2  provided by Plaintiff and the inferior product provided by Defendants in their

3  operation of Arrangement Finders.

4      47.   Established Men's website similarly infringes on Plaintiff's marks.

5  The Established Men website,

6  http://establishedmen.com/dating/relationships.html, uses Plaintiff's trademark,

7  "Mutually Beneficial Relationships" six times to promote Defendants' business.

8      48.   Defendants' use of the trademarked phrase "Mutually Beneficial

9  Relationships" is a clear violation of federal and state trademark law and echoes

10  the trademark violations that were the subject of the 2010 lawsuit.

11  **2.   Defendants' Websites use Plaintiff's Trademarks "Seeking**

12  **Arrangement" and "Mutually Beneficial Relationships" in**

13  **Their Meta-Tags**

14      49.   Meta-tags are elements of website programming that provide

15  information about a website but are not part of the visual presentation of the

16  website. Meta-tags are often used to market websites and to drive search engine

17  traffic to a website. By using another company's trademarks in meta-tags a

18  competitor can fool search engines and other websites into believing that the

19  website is associated with the trademark holder. Defendants' use of Plaintiff's

20  trademarks in its meta-tags is designed to build their competing business through

21  use of the Plaintiff's trademarks and goodwill.

22      50.   Arrangement Finders' website uses "Seeking Arrangement" and

23  "Mutually Beneficial Relationship" as meta-tags in its HTML programming.

24      51.   Established Men's website also uses "Seeking Arrangement" and

25  "Mutually Beneficial Relationship" as meta-tags in its HTML programming.

26      52.   This use of Plaintiff's marks in the meta-tags of Defendants'

27  websites causes Defendants' products to appear when Plaintiff's marks are

28  searched by consumers using search engines. For example, EstablishedMen.com

1 | shows up as the second result on Yahoo, Bing and Google when the term

2 | "Mutually Beneficial Relationships" is searched.

3 |      53.    Use of Plaintiff's marks as meta-tags is a violation of federal and

4 | California trademark law. Furthermore, Defendants' use of Plaintiff's marks in

5 | meta-tags was one of the issues in the prior lawsuit. This repeat of earlier

6 | infringing conduct demonstrates their current infringement is willful, not merely

7 | accidental or negligent.

8 |      **3.**    **Defendants are Currently Purchasing Pay-Per-Click**

9 |             **Advertising on Plaintiff's Trademarks "Seeking Arrangement"**

10 |             **and "Mutually Beneficial Relationships"**

11 |      54.    In addition to using Plaintiff's trademarks on websites owned and

12 | operated by Defendants, Defendants use Plaintiff's trademarks in pay-per-click

13 | advertising systems.

14 |      55.    Various companies, including Google.com, Yahoo.com and

15 | Bing.com, use advertising systems that present advertisements alongside search

16 | results to search engine users depending on the search terms that the user enters

17 | into the search box, and the amount that advertisers are willing to pay to have

18 | their advertisements displayed. For example, a user who entered the phrase

19 | "Levi's jeans" into a search box would likely see advertisements for Levi's brand

20 | jeans or for retailers who sell Levi's jeans. If the user clicked on any of these

21 | advertisements the company sponsoring these advertisements would be charged

22 | the amount that they had bid for each user click. These pay-per-click systems are

23 | often collectively known by the name "Adwords," which is the Google

24 | trademark for its pay-per-click advertising service.

25 |      56.    Defendants are currently bidding on Plaintiff's trademarks using

26 | Adwords in order to have advertisements for the Defendants' businesses

27 | displayed when users enter Plaintiff's trademarks as search terms in popular

28 | search engines. For example, entering Plaintiff's mark "Seeking Arrangement"

1  into the Google.com search engine will display a paid advertisement for

2  Defendants' website www.ArrangementFinders.com. Entering "Seeking

3  Arrangement" into the Yahoo or Bing search engines will display paid

4  advertisements for Defendants' websites www.EstablishedMen.com and

5  www.CougarLife.com. Similarly, entering "mutually beneficial relationships"

6  into the Yahoo or Bing search engines will display a paid advertisement for

7  www.EstablishedMen.com.

8      57.    Because of the structure of pay-per-click advertising systems, the

9  advertisements for Defendants' websites would not appear unless Defendants

10  deliberately paid to have their advertisements appear when users entered

11  Plaintiff's trademarks in the search engines and other pay-per-click advertising

12  portals. This infringing use of Plaintiff's trademarks creates market confusion

13  because it provides advertisements for one of Defendants' competing businesses

14  when a user searches using one of Plaintiff's trademarks.

15      **4.    Defendants Used a Network of Advertising Websites and**

16          **Affiliates to Disguise Their Role in Additional Infringement.**

17          a.    Defendants' Network of Advertising Websites was Created to

18              Deceive Customers and Others from Recognizing

19              Defendants' Role in their Deceptive Advertising and in

20              Infringing the Plaintiff's Trademarks

21      58.    Defendants also own and operate numerous websites that purport to

22  be critical of Defendants' businesses but that actually act as advertisements,

23  driving unsatisfied customers from one of Defendants' businesses to other

24  businesses owned by Defendants. One such website is "Ashley Madison Sucks?"

25  Ashley Madison Sucks can be reached using the URLs

26  www.AshleyMadisonSucks.com and www.AshleyMadisonscam.com, among

27  others. Although Ashley Madison Sucks purports to be critical of Defendants'

28  website, it actually provides users with tips for using the Ashley Madison

1  website and contains numerous links to the Ashley Madison website.

2      59.    At least one of the pages on the AshleyMadisonSucks.com website

3  explicitly uses the "Mutually Beneficial Relationships" mark:

4  http://www.ashleymadisonsucks.com/tag/arrangement-finders/. That page

5  purports to be a post by an individual with the username "Discrete-Male." The

6  post by Discrete-Male promotes Arrangement Finders as a "really cool website

7  that deals with '*mutually beneficial relationships*' and arrangements." (emphasis

8  added). This post also refers to "Arrangement Seekers," the website Defendants

9  previously operated that they agreed to transfer to Plaintiff because it infringed

10  on Plaintiff's "Seeking Arrangement" trademark.

11      60.    Defendants' use of proxy websites to disguise their role in

12  infringement is further evidence of willful intent to infringe on Plaintiff's

13  trademarks.

14          b.    Defendants' Affiliates Infringe on Plaintiff's Trademarks in

15                Order to Build Defendants' Businesses.

16      61.    Defendants also operate networks of internal and external affiliates

17  who are paid for referring customers to Defendants' websites. The external

18  affiliates are third parties who are paid commissions of $200 or more when they

19  refer a customer to one of Defendants' websites and when the customer makes a

20  purchase. The internal affiliates are other websites or businesses owned and

21  operated by Defendants that are paid an intra-business commission for referring

22  customers to the infringing websites. Defendants encourage both their internal

23  and external affiliates to use Plaintiff's trademarks to solicit customers to be

24  referred to Defendants' websites.

25      62.    The operator of the website www.alonelyroad.com is an affiliate of

26  Defendants' businesses. The A Lonely Road website contains a page

27  http://www.alonelyroad.com/find-single-women-escorts.html that uses Plaintiff's

28  trademarks "Mutually Beneficial Relationships" as well as the phrase

1  "arrangement seekers," which infringes on Plaintiff's "Seeking Arrangement"

2  trademark. The website provides links to various websites owned by Defendants,

3  including ArrangementFinders.com and AshleyMadison.com.

4  **G.   Defendants Use the Same Methods Identified Above to Infringe on**

5  **Plaintiff's Other Trademarks "Seeking Millionaire" and "What's**

6  **Your Price"**

7      63.    Defendants are using the same methods identified above to infringe

8  on Plaintiff's new marks: "Seeking Millionaire" and "What's Your Price."

9      **1.    Defendants are Infringing on Plaintiff's Trademarks "Seeking**

10     **Millionaire" and "What's Your Price" by Purchasing Pay-Per-**

11     **Click Advertisements Using Plaintiff's Trademarks**

12     64.    As explained above, pay-per-click advertising systems only display

13  advertisements when the advertising company has explicitly made a bid to have

14  their advertisements appear when a particular term is searched.

15     65.    Entering Plaintiff's trademark "Seeking Millionaire" into the

16  Google, Bing or Yahoo search engines will display paid advertisements for

17  www.CougarLife.com and www.EstablishedMen.com.

18     66.    Entering Plaintiff's trademark, "WhatsYourPrice.com," into the

19  yields a paid advertisement for www.ArrangementFinders.com.

20     67.    Because of the structure of pay-per-click advertising systems, the

21  advertisements for Defendants' websites would not appear unless Defendants

22  deliberately paid to have their advertisements appear when users entered

23  Plaintiff's trademarks "Seeking Millionaire" and "WhatsYourPrice.com" in the

24  search engines and other pay-per-click advertising portals. This infringing use of

25  Plaintiff's trademarks creates market confusion because it provides

26  advertisements for one of Defendants' competing businesses when a user

27  searches using one of Plaintiff's trademarks.

28

**H.   Defendants have Recently Launched the Website "What's Your Vice" that is Engaged in Illegal Cyberpiracy and Designed to Create Market Confusion with Plaintiff's Trademark "What's Your Price"**

68.   Plaintiff's website "What's Your Price" operates a desired service that allows members to offer monetary bids for first dates with other members. Since its launch, What's Your Price has been a commercial success and has attracted substantial attention from media and dating website industry observers. When it launched, What's Your Price was the only website offering its service. Plaintiff InfoStream has spent hundreds of thousands of dollars building, advertising and promoting What's Your Price and creating brand recognition and goodwill among consumers. More specifically, Plaintiff InfoStream has spent hundreds of thousands of dollars to advertise its "What's Your Price" brand on Sirus XM radio and the Howard Stern show.

69.   At the time the domain name WhatsYourPrice.com was registered it was distinctive. No other domain name in use was similar or used confusingly similar words.

70.   Because of its service and the substantial marketing efforts of Plaintiff, the domain name whatsyourprice.com has become a famous mark.

71.   On October 4, 2012, the Ashley Madison Official Blog posted an announcement of a new website launched by Avid: What's Your Vice, which operates at www.WhatsYourVice.com. The What's Your Vice website is a web portal that refers potential consumers to Avid's other websites including: EstablishedMen.com, ArrangementFinders.com, CougarLife.com, SwapperNet.com, TheBigAndTheBeautiful.com, ManCrunch.com and AshleyMadison.com.

72.   Defendants intentionally named their website in order to confuse consumers who are searching for Plaintiff's website www.WhatsYourPrice.com and Plaintiff's "What's Your Price" mark. "What's Your Vice" is confusingly

1  similar to Plaintiff's famous mark, "What's Your Price," both in written form
2  and in spoken form.

3      73.    Defendants have also begun to advertise on Sirius XM and the
4  Howard Stern show, both of which are venues in which Plaintiff has
5  concentrated substantial advertising capital to build the trademark "What's Your
6  Price." By advertising on the same radio stations and during the same radio
7  programs as Plaintiff has advertised its famous mark "What's Your Price,"
8  Defendants are intentionally and willfully creating market confusion using the
9  confusingly similar phrase, "What's Your Vice."

10  I.    **Harm to Plaintiff's Business and Trademarks**

11     74.    Upon information and belief, Defendants' online dating sites that
12  use Plaintiff's trademarks, including ArrangementFinders.com,
13  EstablishedMen.com, AshleyMadison.com, SwapperNet.com, ManCrunch.com,
14  TheBigAndTheBeautiful.com and CougarLife.com are of substantially inferior
15  quality to Plaintiff's famous WhatsYourPrice.com website and associated
16  services such that Plaintiff's Seeking Arrangement mark will suffer, and has
17  suffered, negative associations through Defendants' unauthorized use. Because
18  Defendants' goods and services are of inferior quality to Plaintiff's goods and
19  services, Defendants' unauthorized use of Plaintiff's mark will dilute and has
20  diluted Plaintiff's famous marks.

21     ·75.   Defendants' use of Plaintiff's trademarks for a similar or identical
22  class of services, and distributed through the same channels of trade, is likely to
23  confuse consumers, and has actually caused confusion. The use by Defendants of
24  Plaintiff's "Seeking Millionaire" and "What's Your Price" marks is likely to lead
25  consumers to conclude that Defendants' dating services were exclusively or
26  jointly developed, licensed, or certified by, or is otherwise associated or affiliated
27  with, Plaintiff's online dating services. Consumers, especially those who learn
28  about Defendants' website by word of mouth or by advertisements deliberately

1   placed in venues where Plaintiff has used its registered marks to advertise its

2   goods and services, are likely to be misled as to the source, sponsorship, or

3   affiliation of the Defendants' goods and services.

4         76.     Accordingly, in this action Plaintiff seeks to permanently enjoin

5   Defendants from using its "Seeking Millionaire" and "What's Your Price" marks

6   or any confusingly similar mark or domain names for the marketing and sale of

7   their dating services so that Plaintiff's "Seeking Millionaire," and "What's Your

8   Price" marks can continue to serve as unique identifiers of a predictable nature

9   and quality of goods or services coming from a single source. Plaintiff further

10   seeks to permanently enjoin Defendants from engaging in cyberpiracy by using

11   the confusingly similar URL www.whatsyourvice.com. Defendants'

12   unauthorized use of Plaintiff's "Seeking Millionaire," and "What's Your Price"

13   marks in connection with Defendants' comparatively inferior online dating

14   services has diluted and continues to dilute Plaintiff's mark by diminishing

15   consumer capacity to associate the marks with the quality goods and services

16   signified by Plaintiff's "Seeking Millionaire" and "What's Your Price" marks.

17                             **FIRST CLAIM**

18       **FEDERAL TRADEMARK INFRINGEMENT**

19           **(15 U.S.C. §§ 1114-1117; Lanham Act § 32)**

20         77.     Plaintiff realleges and incorporates by reference each of the

21   allegations contained in the preceding paragraphs of this Complaint.

22         78.     The trademark "Seeking Millionaire" is inherently distinctive and

23   has, over time, also acquired secondary meaning. The public associates the

24   trademark "Seeking Millionaire" with Plaintiff's products and services. This is a

25   result of the "Seeking Millionaire" trademark's inherent distinctiveness and

26   distinctiveness acquired through extensive advertising, sales, and use in

27   commerce throughout the United States.

28         79.     Without Plaintiff's consent, Defendants have used, in connection

1   with the sale, offering for sale, distribution or advertising of Defendants' goods
2   and services that infringe upon the "Seeking Millionaire" mark.

3         80.    These acts of trademark infringement have been committed in
4   connection with Defendants' sale, offering of sale, distribution, and advertising
5   of goods and services with the intent to cause confusion, mistake, or deception,
6   and are in violation of 15 U.S.C. § 1114.

7         81.    As a direct and proximate result of Defendants' infringing activities
8   as alleged herein, Plaintiff has suffered substantial damage.

9         82.    Defendants' infringement of Plaintiff's trademarks as alleged herein
10  is an exceptional case and was intentional. Said exceptional and intentional
11  infringement has damaged Plaintiff as described herein, entitling Plaintiff to
12  treble its actual damages and to an award of attorneys' fees under 15 U.S.C. §§
13  1117(a) and 1117(b).

14                           **SECOND CLAIM**
15              **FEDERAL TRADEMARK INFRINGEMENT**
16              **(15 U.S.C. §§ 1114-1117; Lanham Act § 32)**

17        83.    Plaintiff realleges and incorporates by reference each of the
18  allegations contained in the preceding paragraphs of this Complaint.

19        84.    The trademark "What's Your Price" is inherently distinctive and
20  has, over time, also acquired secondary meaning. The public associates the
21  trademark "What's Your Price" with Plaintiff's products and services. This is a
22  result of the "What's Your Price" trademark's inherent distinctiveness and
23  distinctiveness acquired through extensive advertising, sales, and use in
24  commerce throughout the United States.

25        85.    Without Plaintiff's consent, Defendants have used, in connection
26  with the sale, offering for sale, distribution or advertising of Defendants' goods
27  and services that infringe upon the "What's Your Price" mark.

28        86.    These acts of trademark infringement have been committed in

---

connection with Defendants' sale, offering of sale, distribution, and advertising of goods and services with the intent to cause confusion, mistake, or deception, and are in violation of 15 U.S.C. § 1114.

87.    As a direct and proximate result of Defendants' infringing activities as alleged herein, Plaintiff has suffered substantial damage.

88.    Defendants infringement of Plaintiff's trademarks as alleged herein is an exceptional case and was intentional. Said exceptional and intentional infringement has damaged Plaintiff as described herein, entitling Plaintiff to treble its actual damages and to an award of attorneys' fees under 15 U.S.C. §§ 1117(a) and 1117(b).

## THIRD CLAIM

## FEDERAL FALSE DESIGNATIONS AND DESCRIPTIONS

### (15 U.S.C. §1125; Lanham Act § 43(a))

89.    Plaintiff realleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

90.    The trademark "What's Your Price" is inherently distinctive and has, over time, also acquired secondary meaning. The public associates the trademark "What's Your Price" with Plaintiff's products and services. This is a result of the "What's Your Price" trademark's inherent distinctiveness and distinctiveness acquired through extensive advertising, sales, and use in commerce throughout the United States.

91.    Defendants' conduct constitutes the use of the words, terms, names, symbols or devices tending falsely to describe the infringing goods and services, within the meaning of 15 U.S.C. § 1125(a)(1). Defendants' conduct is likely to cause confusion, mistake, or deception by or in the public as to the affiliation, connection, association, origin, sponsorship or approval of the infringing products to the detriment of Plaintiff and in violation of 15 U.S.C. § 1125(a)(1).

**FOURTH CLAIM**

**FEDERAL DILUTION OF FAMOUS MARK**

**(15 U.S.C. § 1125(c); Lanham Act § 43(a))**

92.     Plaintiff realleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

93.     Plaintiff's "What's Your Price" mark is distinctive and famous within the meaning of the Federal Trademark Dilution Act of 1995, 15 U.S.C. § 1125(c).

94.     Defendants' activities as alleged herein constitute dilution of distinctive quality of Defendants' trademark in violation of the Federal Trademark Dilution Act of 1995, 15 U.S.C. § 1125(c).

95.     Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. § 1125(c).

96.     Because Defendants willfully intended to trade on Plaintiff's reputation or to cause dilution of Plaintiff's famous trademark, Plaintiff is entitled to damages, extraordinary damages, fees and costs pursuant to 15 U.S.C. § 1125(c)(5).

**FIFTH CLAIM**

**FEDERAL CYBERPIRACY**

**(15 U.S.C. § 1125(d); Lanham Act § 43(d))**

97.     Plaintiff realleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

98.     Plaintiff is the owner of the inherently distinctive famous "What's Your Price" Mark. Plaintiff has also registered the famous domain name www.WhatsYourPrice.com.

99.     To date Defendants have intentionally and deceptively made use of its confusingly similar domain name www.WhatsYourVice.com.

100.     Defendants, with a bad faith intention to profit from the

1  www.WhatsYourPrice.com domain name, registered, used and continue to use, a

2  domain name, www.WhatsYourVice.com that is confusingly similar to, and

3  dilutive of, Plaintiff's www.WhatsYourPrice.com domain name.

4      101.   Such conduct on the part of Defendants will cause consumer

5  confusion as to Plaintiff's association with, affiliation with, or sponsorship of

6  Defendants' goods and services, and constitutes cyberpiracy pursuant to § 43(d)

7  of the Lanham Act, 15 U.S.C. § 1125(d).

8      102.   By reason of the foregoing, Plaintiff is entitled to permanent

9  injunctive relief against Defendants restraining further use of the domain name

10  www.WhatsYourVice.com and other confusingly similar domains, and/or

11  ordering the forfeiture or cancellation of the domain name or the transfer of the

12  same to Plaintiff and, after trial, to recover any damages proven to have been

13  caused by reason of Defendants' aforesaid acts of cyberpiracy, together with all

14  other remedies available under the Lanham Act, including, but not limited to,

15  treble damages, disgorgement of profits, and costs and attorney's fees pursuant to

16  15 U.S.C. §§ 1125(d)(1) and 1117(d).

### SIXTH CLAIM

### CALIFORNIA DILUTION AND TRADEMARK INFRINGEMENT

### (Cal. Bus. & Prof. Code §§ 14320, 14330, 14335, 14340)

20      103.   Plaintiff realleges and incorporates by reference each of the

21  allegations contained in the preceding paragraphs of this Complaint.

22      104.   Defendants' intentional and blatant infringement of Plaintiff's

23  federal and state registered trademark constitutes infringement and dilution under

24  California Business & Professions Code §§ 14320, 14330, and 14335.

25      105.   Defendants infringed the "What's Your Price" mark with

26  knowledge and intent to cause confusion, mistake or deception.

27      106.   Defendants' conduct is aggravated by that kind of willfulness,

28  wantonness and malice for which California law allows the imposition of

1   exemplary damages. That is, Defendants' activities were intentional, willful,

2   wanton, fraudulent, and without justification or excuse, and were undertaken

3   with gross indifference to the rights of Plaintiff.

4       107.   Alternatively, Defendants were reckless or grossly negligent in that

5   Defendants actions involved such an entire want of care as could have resulted

6   only actual conscious indifference to the rights and welfare of Plaintiff.

7       108.   As a direct and proximate result of Defendants' conduct, pursuant to

8   California Business & Professions Code § 14340, Plaintiff is entitled to

9   injunctive relief and damages in the amount of three times Defendants' profits

10  and three times all damages suffered by Plaintiff by reason of Defendants' use,

11  marketing and advertising of the "What's Your Price" mark.

**SEVENTH CLAIM**

**CALIFORNIA DILUTION AND TRADEMARK INFRINGEMENT**

**(Cal. Bus. & Prof. Code §§ 14320, 14330, 14335, 14340)**

15      109.   Plaintiff realleges and incorporates by reference each of the

16  allegations contained in the preceding paragraphs of this Complaint.

17      110.   Defendants' intentional and blatant infringement of Plaintiff's

18  federal and state registered trademark constitutes infringement and dilution under

19  California Business & Professions Code §§ 14320, 14330, and 14335.

20      111.   Defendants infringed the "Seeking Millionaire" mark with

21  knowledge and intent to cause confusion, mistake or deception.

22      112.   Defendants' conduct is aggravated by that kind of willfulness,

23  wantonness and malice for which California law allows the imposition of

24  exemplary damages. That is, Defendants' activities were intentional, willful,

25  wanton, fraudulent, and without justification or excuse, and were undertaken

26  with gross indifference to the rights of Plaintiff.

27      113.   Alternatively, Defendants were reckless or grossly negligent in that

28  Defendants' actions involved such an entire want of care as could have resulted

25

COMPLAINT

from only an actual conscious indifference to the rights and welfare of Plaintiff.

114.   As a direct and proximate result of Defendants' conduct, pursuant to California Business & Professions Code § 14340, Plaintiff is entitled to injunctive relief and damages in the amount of three times Defendants' profits and three times all damages suffered by Plaintiff by reason of Defendants' use, marketing and advertising of the "Seeking Millionaire" mark.

## EIGHTH CLAIM

## CALIFORNIA UNFAIR COMPETITION

### (Cal. Bus. & Prof. Code § 17200)

115.   Plaintiff realleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

116.   Defendants' infringement of Plaintiff's "Seeking Millionaire" and "What's Your Price" marks constitutes "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising" within the meaning of California Business & Professions Code § 17200.

117.   As a consequence of Defendants' actions, Plaintiff is entitled to injunctive relief and an order that Defendants disgorge all profits on the manufacture, use, display or sale of infringing goods.

## PRAYER FOR JUDGMENT

WHEREFORE, PLAINTIFF prays that this Court grant it the following relief:

1. Adjudge that Plaintiff's "Seeking Millionaire" and "What's Your Price" marks have been infringed by Defendants in violation of Plaintiff's right under common law, 15 U.S.C. § 1114, and/or California law;

2. Adjudge that Defendants have competed unfairly with Plaintiff in violation of Plaintiff's rights under common law, 15 U.S.C. § 1125(a), and/or California law.

3. Adjudge that Defendants' activities are likely to, or have, diluted

1  Plaintiff's famous "Seeking Millionaire" and "What's Your Price" marks in
2  violation of Plaintiff's rights under common law, 15 U.S.C. § 1125(c), and/or
3  California law;

4      4.   Adjudge that Defendants and each of its agents, employees, attorneys,
5  successors, assigns, affiliates, and joint ventures and any person(s) in active
6  concert or participation with them, and/or persona(s) acting for, with, by, through
7  or under them, be enjoined and restrained at first during the pendency of this
8  action and thereafter permanently from:

9      a.   Selling, offering for sale distributing, advertising, or promoting any
10          goods or services that display any words or symbols that so
11          resembles Plaintiff's "Seeking Millionaire" and "What's Your
12          Price" marks as to be likely to cause confusion, mistake or
13          deception, on or in connection with any goods or services that are
14          not authorized by or for Plaintiff;

15     b.   Using the "Seeking Millionaire" and "What's Your Price" marks,
16          and any other marks or domain names confusingly similar to the
17          "Seeking Millionaire" and "What's Your Price" marks alone or in
18          combination with any other letters, words, letter strings, phrases or
19          designs, in commerce or in connection with any goods or services;

20     c.   Using any word, term, name, symbol, device or combination thereof
21          that causes or is likely to cause confusion, mistake or deception as to
22          the affiliation or association of Defendants or its goods with
23          Plaintiff or as to the origin of Defendants' goods or services, or any
24          false designation of origin, false or misleading description or
25          representation of fact;

26     d.   Further infringing the rights of Plaintiff in and to any of its
27          trademarks in its "Seeking Millionaire" and "What's Your Price"
28          marks products and services or otherwise damaging Plaintiff's

goodwill or business reputation;

e.   Otherwise competing unfairly with Plaintiff in any manner; and

f.   Continuing to perform in any manner whatsoever any of the other acts complained of in the Complaint;

5.  Adjudge that Defendants be required immediately to supply Plaintiff's counsel with a complete list of individuals and entities from whom or which it purchased, and to whom or which it sold, offered for sale, distributed, advertised or promoted, infringing goods and services as alleged in this Complaint;

6.  Adjudge that Defendants, within thirty (30) days after service of the Judgment demanded herein, be required to file with this Court and serve upon Plaintiff's counsel a written report under oath setting forth in detail the manner in which it has complied with the Judgment;

7.  Adjudge that Plaintiff recovers from Defendants its actual damages and lost profits in an amount of over $6,000,000.00, that Defendants be required to account for any profits that are attributable to its illegal acts, and that Plaintiff be awarded the greater of (1) three times Defendants' profits or (2) three times any damages sustained by Plaintiff under 15 U.S.C § 1117, plus prejudgment interest;

8.  Adjudge that Plaintiff recovers from Defendants its compensatory damages and costs pursuant to the prior Consent Decree between the parties, including without limitation statutory damages and reasonable attorneys' fees;

9.  Impose a constructive trust on all Defendants' fund and assets that arise out of Defendants' infringing activities;

10. Adjudge that Defendants be required to pay Plaintiff's punitive damages for their oppression, fraud, malice and gross negligence, whether grounded on proof of actual damages incurred by Plaintiff or on proof of Defendants' unjust enrichment;

11. Adjudge that Plaintiff be awarded its costs and disbursement incurred in connection with this action, including Plaintiff's reasonable attorneys' fees and

1   investigative expenses; and

2       12.Adjudge that all such other relief be awarded to Plaintiff as this Court

3   deems just and proper.

4

5   Respectfully submitted,

6

7   DATED:  October 29, 2012       CLYDE SNOW & SESSIONS

8

9

10                         By:

11                                 Mark L. Smith

12                                 Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mark L. Smith (Bar No. 213829)
CLYDE SNOW & SESSIONS, P.C.
10990 Wilshire Boulevard, Fourth Floor,
Los Angeles, CA 90024
(424) 672-4815

COPY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Infostream Group, Inc., *a Nevada corporation,* <br><br> v. <br><br> **PLAINTIFF(S)** <br><br> Avid Life Media, Inc., Avid Dating Life, Inc., d/b/a The Ashley Madison Agency, Established Men, Inc.,, Corporations 1-10, LLCs A-Z, Does 1-10, <br><br> *See attached* <br><br> **DEFENDANT(S).** | CASE NUMBER <br> **CV12-09315** <br> NWF (JALX) <br><br><br> **SUMMONS** |

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within   21   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,   Mark L. Smith   , whose address is   10990 Wilshire Boulevard, Fourth Floor, Los Angeles, CA 90024   . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

OCT 3 0 2012

Clerk, U.S. District Court

**JULIE PRADO**

Dated: _____

By: _____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                        SUMMONS

UNITED STATES ~~DISTRICT~~ ~~TRICT~~ COURT, CENTRAL DISTRICT OF ~~CALIFORNIA~~ ~~ALIFORNIA~~
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>Infostream Group, Inc. | DEFENDANTS<br>Avid Life Media, Inc., Avid Dating Life, Inc. d/b/a The Ashley Madison Agency, Established Men, Inc., Corporations 1-10, Limited Liability Companies A-Z, Does 1-10 |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>Mark L. Smith, CLYDE SNOW & SESSIONS, P.C.<br>10990 Wilshire Boulevard, Fourth Floor, Los Angeles, CA 90024<br>(424) 672-4815 | Attorneys (If Known)<br>Seth A. Gold; Christina N. Goodrich, K&L GATES, LLP<br>10100 Santa Monica Boulevard, Seventh Floor, Los Angeles, CA 90067<br>(310) 552-5000 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☑ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☑ 5 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No  ☑ MONEY DEMANDED IN COMPLAINT: $ +6,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. §1114-1117(trademark infringement); 15 U.S.C. §1125, (c), (d)(false designation and descriptions, dilution of mark, cyberpiracy); 28 U.S.C. §1332(diversity)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS<br>PERSONAL INJURY | TORTS<br>PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE/ PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☑ 840 Trademark |
| ☑ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**CV12-09315**

FOR OFFICE USE ONLY:     Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

UNITED STATES    STRICT COURT, CENTRAL DISTRICT OF    LIFORNIA
CIVIL COVER SHEET

VIII(a).  IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

VIII(b).  RELATED CASES:  Have any cases been previously filed in this court that are related to the present case?  ☑ No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                              ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                              ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                              ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE: (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Nevada (plaintiff Infostream Group, Inc.) |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Canada (each and every named defendant) |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date 10/29/2012

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |