1

2

3                                                          O

4

5

6                                              JS - 6

7

8                 UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11   INFOSTREAM GROUP INC, a      )   Case No. CV 12-09315 DDP (AJWx)
     Nevada Corporation,          )
12                                )
                   Plaintiff,     )   **ORDER GRANTING DEFENDANTS' MOTION**
13                                )   **TO DISMISS**
          v.                      )
14                                )
     AVID LIFE MEDIA INC.,a       )
15   foreign corporation, et al., )   [Dkt. No. 30]
                                  )
16                   Defendants.  )
     _____)
17

18        Presently before the court is Defendants' Motion to Dismiss

19   Plaintiff's Second Amended Complaint.  Having considered the

20   submissions of the parties, the court grants the motion and adopts

21   the following order.

22   **I.   Background**

23        A.   The parties and their business operations

24        Plaintiff Infostream Group Inc. ("Infostream") owns and

25   operates several "sugar daddy dating," websites, which seek to

26   match "generous benefactors willing to pamper and offer financial

27   assistance or gifts to younger attractive partners in return for

28   their friendship or companionship."  (Second Amended Complaint

1  ("SAC") ¶ 13.)  Plaintiff owns and operates, among other sites,

2  SeekingMillionaire.com, WhatsYourPrice.com, and

3  SeekingArrangement.com.  (SAC ¶ 15.)

4      Defendant Avid Life Media also operates dating websites,

5  including EstablishedMen.com, ArrangementFinders.com, and

6  CougarLife.com, as well as AshleyMadison.com, which facilitates

7  extramarital affairs.  (SAC ¶¶ 29-30).  Defendant Established Men[1]

8  operates sugar daddy websites such as EstablishedMen.com,

9  ArrangementFinders.com, and, formerly, ArrangementSeekers.com.

10  (SAC ¶¶ 31-32).

11      Infostream owns the registered trademarks "Seeking

12  Arrangement," "Mutually Beneficial Relationships," "Seeking

13  Millionaire," and "What's Your Price" in the United States.  (Id.

14  ¶¶ 21-25.)  Infostream alleges that it has continuously used its

15  registered trademarks to promote and advertise its online dating

16  goods and services, and that its continuous efforts in advertising

17  attract unsolicited media coverage and attention.  (Id. ¶¶ 17, 18,

18  26-28.)  Infostream alleges that the consumers have recognized and

19  associated these trademarks with the products and services it

20  provides.  (Id. ¶¶ 19, 20, 28)

21      B.  Prior litigation

22      In 2010, Infostream sued Defendants (collectively, "Avid") in

23  the United States District Court for the Central District of

24  California for, among other things, trademark infringement,

25  dilution, and unfair competition based on Avid's alleged use of

26  Infostream's "Seeking Arrangement" and "Mutually Beneficial

27  

28      [1] This order refers to Defendants collectively as "Avid."

2

1  Relationships" marks.  (<u>See generally</u> No. CV 10-05166 VBF (FMO)).

2  Avid filed counterclaims for cancellation of trademark and a

3  separate action against Infostream in Canada for breach of

4  contract.  (SAC ¶ 40).  The parties ultimately dismissed all

5  claims against each other, pursuant to a written settlement

6  agreement (the "Agreement").

7      Under the Agreement, Avid agreed to discontinue using the

8  terms "'Arrangement Seekers' (or an iteration or confusing similar

9  combination of the words 'arrangement' and 'seek') and 'Mutually

10  Beneficial Relationship' in any manner."  (Settlement Agreement ¶

11  2.)  The term "using" included, but was not limited to, imitating,

12  copying, keyword stuffing, or advertising (e.g., through Google

13  Adwords), with the prohibited terms.  (<u>Id.</u> ¶ 4; SAC ¶ 41.)  The

14  Parties expressly agreed that "(1) the name 'Arrangement Finders'

15  shall serve as a suitable alternative which does not infringe upon

16  the **Seeking Arrangement Mark**; and (2) the term 'Mutually Beneficial

17  Arrangements' shall serve as a suitable alternative which does not

18  infringe upon the **Mutually Beneficial Relationships Mark**."

19  (Settlement Agreement ¶ 4 (emphasis in original).)

20      C.  The current dispute

21      As explained in this court's earlier order, advertisers pay to

22  have their advertising displays linked to certain search terms or

23  keywords.  When users search for those linked terms, the search

24  engine may display a sponsored advertisement alongside the search

25  results.  For example, pizza purveyors Dominos and Pizza Hut might

26  pay a search engine for the keywords "pizza delivery."  A user

27  search for the term "pizza delivery" might then yield

28  advertisements for Domino's or Pizza Hut, or both.  If a user

proceeds to click on one of the ads and access an advertiser's site ("click through"), the sponsoring advertiser pays the search engine an additional per-click fee.  These advertising arrangements are often known as "Adwords" systems.

Infostream alleges that Avid uses Infostream's "Mutually Beneficial Relationships" mark to promote Avid's arrangementfinders.com website.  (Id. ¶ 61-62.)  Infostream further alleges that Avid purchases pay-per-click advertisements using Infostream's "Seeking Millionaire" trademark on search engines such as Google.com, Yahoo.com, and Bing.com.  (Id. ¶ 68.)  According to the SAC, a search of the term "Seeking Millionaire" on those search engines will display paid advertisements for Avid's sites CougarLife.com and EstablishedMen.com.  (Id. ¶ 68, Ex. E.)  Infostream further alleges that clicking on the advertisement for the CougarLife.com website displays language that is confusingly similar to Infostream's "Mutually Beneficial Relationships" mark.  (Id. ¶ 68.)  Specifically, Infostream alleges that a page on the cougarlife.com site uses the confusingly similar phrase "[a] cougar relationship can be a mutually beneficial one . . . ."  (Id. ¶ 68, Ex. F.)

The SAC also alleges that a search for "whatsyourprice.com" yields pay-per-click advertisements for Avid's arrangementfinders.com site.  (Id. ¶ 69, Ex. G.)  Infostream further claims that the advertisements for ArrangementFinders.com use the term "mutually beneficial arrangements," which is allegedly similar to Infostream's trademark "Mutually Beneficial Relationships."  (Id. ¶ 69.)

1    Further, Infostream alleges that Avid uses the "Seeking
2    Arrangement" and "Mutually Beneficial Relationships" marks in its
3    marketing.  (Id. ¶¶ 44, 45, 47-50, 55, 56, Exs. A-D.)  For example,
4    arragementfinders.com claims that it is a "site where men and women
5    find discreet, mutually beneficial relationships." (Id. Ex. A.)
6    Establishedmen.com also uses the phrases "mutually beneficial
7    relationships" and "mutually beneficial relationship" on its site
8    to promote Avid's business.  (Id. ¶ 45, Ex. B.)  Infostream further
9    alleges that Avid uses the "Seeking Arrangement" and "Mutually
10   Beneficial Relationships" marks as meta-tags in its HTML
11   programming to drive search engine traffic to its websites.  (Id.
12   ¶¶ 47-50.)  In addition, Infostream alleges that Avid uses the
13   "Seeking Arrangement" and "Mutually Beneficial Relationships" marks
14   in pay-per-click advertising on Google, Yahoo, and Bing.  (Id. ¶¶
15   52-56, Exs. C-D.)  Infostream alleges that, because the nature of
16   goods and services provided and the advertising venues used by the
17   Parties are similar, its less sophisticated consumers are likely to
18   be confused by Avid's use of Infostream's marks.  (Id. ¶¶ 71-74.)
19   The SAC alleges causes of action for (1) Federal Trademark
20   Infringement, (2) Federal False Designations and Descriptions; (3)
21   Federal Trademark Dilution, (4) California Common Law Trademark
22   Infringement, (5) California Dilution of Famous Marks, and (6)
23   California Unfair Business Practices.
24   **II.  Legal Standard**
25       A complaint will survive a motion to dismiss when it contains
26   "sufficient factual matter, accepted as true, to state a claim to
27   relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S.
28   662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

570 (2007)).  When considering a Rule 12(b)(6) motion, a court must
"accept as true all allegations of material fact and must construe
those facts in the light most favorable to the plaintiff." <u>Resnick</u>
<u>v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000).  Although a complaint
need not include "detailed factual allegations," it must offer
"more than an unadorned, the-defendant-unlawfully-harmed-me
accusation." <u>Iqbal</u>, 556 U.S. at 678.  Conclusory allegations or
allegations that are no more than a statement of a legal conclusion
"are not entitled to the assumption of truth." <u>Id.</u> at 679.  In
other words, a pleading that merely offers "labels and
conclusions," a "formulaic recitation of the elements," or "naked
assertions" will not be sufficient to state a claim upon which
relief can be granted.  <u>Id.</u> at 678 (citations and internal
quotation marks omitted).

    "When there are well-pleaded factual allegations, a court should
assume their veracity and then determine whether they plausibly
give rise to an entitlement of relief." <u>Id.</u> at 679.  Plaintiffs
must allege "plausible grounds to infer" that their claims rise
"above the speculative level." <u>Twombly</u>, 550 U.S. at 555.
"Determining whether a complaint states a plausible claim for
relief" is a "context-specific task that requires the reviewing
court to draw on its judicial experience and common sense."  <u>Iqbal</u>,
556 U.S. at 679.

**III. Discussion**

    A.  "Mutually Beneficial Relationships" and "Seeking
         Arrangement" Claims

    As an initial matter, Avid argues, and Infostream does not
dispute, that all of Infostream's claims regarding its "Mutually

1  Beneficial Relationships" and "Seeking Arrangement" marks are the

2  same as those brought as counterclaims in a related action, <u>Avid</u>

3  <u>Life Media Inc. v. Inforstream Group Inc.</u>, Case No. CV 12-09315-DDP

4  (AJW).  (<u>See</u> Amended Counterclaim ¶¶ 45-64, 66-70.)  The court

5  agrees with both parties that such claims are better addressed in

6  the first-filed related action.  Infostream's "Mutually Beneficial

7  Relationships" and "Seeking Arrangement" claims are, therefore,

8  stricken.  Fed. R. Civ. P. 12(f).

9       B.   "WhatsYourPrice.com" and "Seeking Millionaire" claims

10      As explained in this court's earlier order granting Avid's

11  Motion to Dismiss Infostream's First Amended Complaint, a trademark

12  Plaintiff must show that Defendants' use of Plaintiff's marks

13  creates a likelihood of consumer confusion.[2]  <u>Murray v. Cable Nat'l</u>

14  <u>Broad Co.</u>, 86 F.3d 858, 859 (9th Cir. 1996); <u>Playboy Enters. V.</u>

15  <u>Netscape. Commc'ns Corp.</u>, 354 F.3d 1020, 1024 n.10 (9th Cir. 2004)

16  (California trademark claims are "substantially congruent" with

17  federal claims.).[3]  "A likelihood of confusion exists when a

18  consumer viewing a service mark is likely to purchase the services

19  under the mistaken belief that the services are, or [are]

20  associated with, the services of another provider." <u>Murray</u>, 86

21  F.3d at 861.  Courts may determine likelihood of confusion as a

22  matter of law on either a motion to dismiss or summary judgment.

23  <u>Id.</u> at 860-61.

24

_____

25      [2] The issue presented here is identical to that raised in

26  Avid's earlier motion.  The court's discussion here, therefore,
    draws heavily from its earlier order dismissing Infostream's FAC.

27      [3] The parties appear to agree that the viability of all of

28  Plaintiff's claims turns on the likelihood of confusion.  (Mot. at
    19, 22; Opp. at 13.)

1    In <u>AMF Inc. v. Sleekcraft Boats</u>, 599 F.2d 341 (9th Cir. 1979),
2 the Ninth Circuit provided a non-exhaustive list of eight factors
3 relevant to likelihood of confusion: 1) strength of the mark, 2)
4 proximity of the goods at issue, 3) similarity of the marks, 4)
5 evidence of actual consumer confusion, 5) marketing channels used,
6 6) type of goods and degree of care likely to be exercised by the
7 purchaser, 7) the defendant's intent in selecting the mark, and 8)
8 the likelihood of product line expansion.  <u>Sleekcraft</u>, 599 F.2d at
9 348-49.  The court subsequently, and repeatedly, emphasized that
10 the <u>Sleekcraft</u> factors are but guideposts, and should not be
11 applied mechanically or by rote.  <u>See Network Automation Inc. v.
12 Advanced Sys. Concepts, Inc.</u>, 638 F.3d 1137, 1145-46 (9th Cir.
13 2011) (summarizing cases).  The court has specifically recognized
14 that emerging technologies, particularly the Internet, require a
15 flexible approach to the inquiry into likelihood of confusion.
16 <u>Brookfield Commc'ns., Inc. v. West Coast Entm't Corp.</u>, 174 F.3d
17 1036, 1054 (9th Cir. 1999).
18    The Ninth Circuit addressed an advertising keyword dispute
19 very similar to that here in <u>Network Automation</u>.  In examining
20 whether a preliminary injunction was properly entered in a keyword
21 advertising dispute, the <u>Network Automation</u> court proceeded to
22 weigh all eight <u>Sleekcraft</u> factors.  <u>Id.</u> at 1149-53.  The court
23 further held, however, that "[i]n the keyword advertising context
24 the likelihood of confusion will ultimately turn on what the
25 consumer saw on the screen and reasonably believed, given the
26 context."  <u>Id.</u> at 1153 (quotation and citation omitted).  Though it
27 declined to adopt an additional multi-factor test, the <u>Network
28 Automation</u> court recognized that the appearance of particular ads

1  and the surrounding visual context is important, in part, because

2  clearly labeled or segregated ads might eliminate any potential

3  consumer confusion.  Id. at 1154 (citing Playboy, 354 F.3d at 1023,

4  1030.).  The court therefore concluded that "the labeling and

5  appearance of the advertisements and the surrounding context on the

6  screen displaying the results page" is one of the "most relevant

7  factors" to the likelihood of confusion analysis in an advertising

8  keywords case.  Id.

9       Infostream's SAC alleges that a search for its "Seeking

10  Millionaire" or "What's Your Price" marks will display paid

11  advertisements for Avid's sites, specifically CougarLife.com,

12  EstablishedMen.com, or ArrangementFinders.com.  (SAC ¶¶ 68-69.)

13  Unlike the FAC, Infostream's SAC includes, as it must, allegations

14  regarding the placement, appearance, and context of Defendant's

15  advertisements.  See Network Automation, 638 F.3d at 1153.  The SAC

16  alleges, for example, that when its mark "Seeking Millionaire" is

17  searched on Bing.com, an advertisement for Avid's CougarLife.com is

18  displayed "directly to the right of the search term result . . .

19  differentiated . . . only by the word 'ads' appearing above the

20  advertisements . . . ."  (SAC ¶ 68.)  The SAC also includes images

21  of these search results, consistent with Infostream's description.

22  (SAC Exs. E, G.)

23       The allegations of the SAC, though more complete than previous

24  iterations, are nevertheless self-defeating.  Even prior to its

25  Network Automation decision, the Ninth Circuit recognized that

26  internet consumers "fully expect to find some sites that aren't

27  what they imagine based on a glance at the domain name or search

28  engine summary.  Outside the special case of . . . domains that

1  actively claim affiliation with the trademark holder, consumers

2  don't form any firm expectations about the sponsorship of a website

3  until they've seen the landing page – if then." <u>Toyota Motor Sales</u>

4  <u>v. Tabari</u>, 610 F.3d 1171, 1179 (9th Cir. 2010) (emphasis added).

5  <u>Network Automation</u> further explained that clear labeling of an

6  advertisement might eliminate any possibility of consumer

7  confusion.  <u>Network Automation</u>, 638 F.3d at 1153-54.  Here, the SAC

8  alleges that consumers searching for Infostream's trademarks saw

9  Avid advertisements off to the side of actual search results under

10 the heading "ads."  Neither those ads nor the domain names of the

11 sites advertised are alleged to have referenced any protected mark.

12 Under such circumstances, "[i]n the age of FIOS, cable modems, DSL

13 and T1 lines," Infostream cannot plausibly claim that Avid's mere

14 use of keywords caused any consumer confusion.  <u>Tabari</u>, 610 F.2d at

15 1179.

16 **IV.  Conclusion**

17      For the reasons stated above, Defendants' Motion to Dismiss is

18 GRANTED.  All claims regarding Infostream's "Mutually Beneficial

19 Relationships" and "Seeking Arrangement" marks are STRICKEN, and

20 must be brought in the related action.  All remaining claims are

21 DISMISSED, with prejudice.

22

23

24 IT IS SO ORDERED.

25

26

27 Dated: November 12, 2013

28
                                    DEAN D. PREGERSON
                                    United States District Judge

                                    10